UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| MONTEZ R. WAYNE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No: 1:23CV53 HEA |
| | ) |
| BILL STANGE and ANDREW BAILEY, | ) |
| | ) |
| Respondents. | ) |

## OPINION, MEMORANDUM AND ORDER

Petitioner filed a *pro se* Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 [Doc. No. 1] on April 5, 2023. Respondents filed a Response to the Court's Order to Show Cause Why Relief Should Not be Granted on June 15, 2023. Pursuant to Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts, this Court has determined that there are no issues asserted that give rise to an evidentiary hearing and therefore one is not warranted. For the reasons set forth below, the Petition will be denied.

**Factual Background**

Petitioner was indicted for first-degree robbery, armed criminal action, attempted first-degree robbery, armed criminal action, first-degree robbery, armed criminal action, first-degree robbery, and armed criminal action (Respondent's Exhibit B, PDF p. 24). The cause tried before a jury on September 25, 2016. The

full background of the facts surrounding this Petition are set forth in Respondents' Response to the Court's Show Cause Order.

Petitioner now raises two grounds for relief, alleging claims of ineffective assistance of counsel.

## Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA") applies to all petitions for habeas relief filed by state prisoners after the statute's effective date of April 24, 1996. When reviewing a claim that has been decided on the merits by a state court, AEDPA limits the scope of judicial review in a habeas proceeding as follows:

> An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

In construing AEDPA, the United States Supreme Court, in *Williams v. Taylor*, held that:

2

> Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. 362, 412–13 (2000). Furthermore, the *Williams* Court held that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." 529 U.S. at 409.

A state court decision must be left undisturbed unless the decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States, or the decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. *Colvin v. Taylor*, 324 F.3d 583, 586-87 (8th Cir. 2003).

A decision is contrary to United States Supreme Court precedent if it decides a case based on a different rule of law than the rule dictated by United States Supreme Court precedent, or it decides a case differently than the United States Supreme Court did on materially indistinguishable facts. *Id*. A decision may only be overturned, as an unreasonable application of clearly established United States Supreme Court precedent, if the decision is both wrong and an objectively

3

unreasonable interpretation or application of United States Supreme Court precedent. *Id*. A federal habeas court may not disturb an objectively reasonable state court decision on a question of federal law even if the decision is, in the federal court's view, wrong under Eighth Circuit precedent, and even if the habeas court would have decided the case differently on a clean slate. *Id*. State court factual determinations are presumed to be correct, and this presumption can only be rebutted by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

## Statute of Limitations

Congress provides a one-year window in which a habeas applicant can file a petition for writ of habeas corpus. That window opens at the conclusion of direct review. The window closes a year later. Failure to file within that one-year window requires the court to dismiss the petition for writ of habeas corpus. 28 U.S.C. §2244(d) (1) (A); See *Cross-Bey v. Gammon*, 322 F.3d 1012 (8th Cir.), cert. denied, 540 U.S. 971 (2003). If an inmate does not seek a writ of certiorari on direct review, direct review concludes when the time limit for seeking further review expires. *Gonzales v. Thaler*, 132 S. Ct. 641, 653-54 (2012). Under Missouri Supreme Court Rule 30.01, Rule 30.03, Rule 81.04, and Rule 81.08, the time limit for filing a notice of appeal is ten days after sentencing.

## Ineffective Assistance of Counsel

4

To prevail on his ineffective assistance of counsel claims, Petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. See *Strickland v. Washington*, 466 U.S. 668, 688 (1984). With respect to the first *Strickland* prong, there is a strong presumption that counsel's conduct fell within the wide range of professionally reasonable assistance. *Id.* at 689. Thus, "counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and the "burden to show that counsel's performance was deficient rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2a013) (quotation marks and citation omitted); see also *Strickland*, 466 U.S. at 689 (noting that a petitioner must show that the challenged action was not part of a sound trial strategy); *Abernathy v. Hobbs*, 748 F.3d 813, 816 (8th Cir. 2014) (explaining that reviewing courts must refrain "from engaging in hindsight or second-guessing of trial counsel's strategic decisions") (citation omitted)).

To establish "prejudice," the petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome." *Paulson v. Newton Corr. Facility*, 773

5

F.3d 901, 904 (8th Cir. 2014) (citation omitted). Although *Strickland* requires a showing of both deficient performance and prejudice, a "finding that no prejudice exists is sufficient to conclude that counsel was not constitutionally ineffective – [courts] need not make a determination regarding deficiency*." Holder v. United States*, 721 F.3d 979, 987 (8th Cir. 2013).

"Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011)).

> First, under *Strickland*, the state court must take a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different absent the errors. *Strickland*, 466 U.S. 696. ... To satisfy *Strickland*, the likelihood of a different result must be "substantial, not just conceivable." *Id*. Under AEDPA, [federal courts] must then give substantial deference to the state court's predictive judgment. So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the *Strickland* standard is unreasonable, not merely whether it is incorrect. [*Harrington v. Richter*, 562 U.S. 86, 112, 101 (2011)]. This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at [102.]

*Williams*, 695 F.3d at 831-32. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105.

6

In this context, a state court's findings of fact made in the course of deciding a claim of ineffective assistance of counsel are presumed to be correct. *Odem v. Hopkins*, 382 F.3d 846, 849 (8th Cir. 2004).

## Procedural Default

To preserve a claim for federal habeas review, a state prisoner "must present that claim to the state court and allow that court an opportunity to address [his or her] claim." *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* The federal habeas court will consider a procedurally defaulted claim only "where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)). To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, "[t]he habeas petitioner must show 'not merely that the errors at...trial created a possibility of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Lastly, in

7

order to assert the fundamental miscarriage of justice exception, a petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

## Discussion

Review under 28 U.S.C. § 2254 is a review to determine whether a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

**Ground One**

Petitioner challenges his attorney's failure to request an instruction on identification. The Missouri Court of Appeals considered this claim on Petitioner's post-conviction appeal:

> First, Movant argues trial counsel's strategy did not "make sense." The record shows trial counsel's decision not to request the instruction was consistent with his defense strategy. As the motion court found, trial counsel's "strategy was to test the state's evidence and the identification through the evidence and the closing arguments but [he did] not want [ ] to highlight these issues in a jury instruction." Trial counsel pursued a defense of misidentification, specifically no "opportunity to observe" or no opportunity to identify. Trial counsel argued the State's witnesses were not credible, believable, or trustworthy, given some of their criminal records and inconsistent testimony. Trial counsel emphasized these witnesses could not have identified Movant because the individuals robbing the locations covered their faces, wore generic clothing, and quickly fled the scene. Trial counsel argued the evidence, particularly the challenged witnesses, was "not enough to identify" Movant as the robber.

8

The eyewitness identification instruction lists factors a juror should consider in the assessing the credibility of the witnesses:

One, the witness's eyesight;
Two, the lighting conditions at the time the witness viewed the person in question;
Three, the visibility at the time the witness viewed the person in question;
Four, the distance between the witness and the person in question;
Five, the angle from which the witness viewed the person in question;
Six, the weather conditions at the time the witness viewed the person in question;
Seven, whether the witness was familiar with the person identified;
Eight, any intoxication, fatigue, illness, injury or other impairment of the witness at the time the witness viewed the person in question;
Nine, whether the witness and the person in question are of different races or ethnicities;
Ten, whether the witness was affected by any stress or other distraction or event, such as the presence of a weapon, at the time the witness viewed the person in question;
Eleven, the length of time the witness had to observe the person in question;
Twelve, the passage of time between the witness's exposure to the person in question and the identification of the defendant;
Thirteen, the witness's level of certainty of [his] [her] identification, bearing in mind that a person may be certain but mistaken;
Fourteen, the method by which the witness identified the defendant, including whether it was
[i. at the scene of the offense;]
[ii. (In a live or photographic lineup.) In determining the reliability of the identification made at the lineup, you may consider such factors as the time elapsed between the witness's opportunity to view the person in question and the lineup, who was in the lineup, the instructions given to the witness during the lineup, and any other circumstances which may affect the reliability of the identification;]
[iii. (In a live or photographic show-up.) A "show-up" is a procedure in which law enforcement presents an eyewitness with a single suspect for identification. In determining the reliability of the identification made at the show-up, you may consider such factors as the time elapsed between the witness's opportunity to view the person in question and the show-up, the instructions given to the witness during the show-up, and any other circumstances which may affect the reliability of the identification;]

9

Fifteen, any description provided by the witness after the event and before identifying the defendant;

Sixteen, whether the witness's identification of the defendant was consistent or inconsistent with any earlier identification(s) made by the witness; and

Seventeen, [other factors.] [any other factor which may bear on the reliability of the witness's identification of the defendant.]

MAI-CR 4th 410.02.

Many of these instructions could strengthen the State's eyewitness testimony. For example, the Church's Chicken manager's testimony is bolstered by the instructions. The manager testified she: recognized Movant from prior encounters at the restaurant; only wears glasses for reading and had no problems seeing anyone in the restaurant; watched Movant walk through the restaurant door; watched Movant place a gun on the counter and demand money from her; was certain of Movant being one of the individuals who robbed the restaurant; and was certain of her identification of Movant in a photo lineup. The manager's husband's testimony is also bolstered by the instructions. He testified he: saw Movant and the other robber, without masks, outside the restaurant under a street lamp; was approximately fifteen feet from the restaurant's front doors when he watched Movant and the other robber walk in the restaurant; was approximately thirty feet away from Movant when he watched Movant and the other robber approach the restaurant counter with a gun; could clearly see the incident because his view was not blocked by any displays or signs in the windows of the restaurant; and, as Movant fled, recognized Movant from a prior incident at the restaurant.

As for the March 22 Family Dollar robbery, the Family Dollar manger's testimony, for example, is also bolstered by the instructions. She testified she: noticed Movant had very distinctive eyes; was able to clearly see Movant as he faced her and the cashier with a gun; immediately recognized Movant as one of the robbers in a photo lineup and was certain of her identification of Movant as one of the robbers; identified Movant in a live lineup and was certain of her identification of Movant as one of the robbers.

Thus, if counsel requested this instruction, which arguably renders the witnesses' identifications more credible, it would have undermined the defense theory. See *Curry v. State*, 438 S.W.3d 523, 525 (Mo. App. E.D. 2014); see also *Thompson v. State*, 437 S.W.3d 253, 261 (Mo. App. W.D.

10

2014). "An objectively reasonable choice not to submit an available instruction does not constitute ineffective assistance of counsel." *Shockley v. State*, 579 S.W.3d 881, 913 (Mo. banc 2016). Because "[i]t is not ineffective assistance of counsel to pursue one reasonable trial strategy to the exclusion of another reasonable trial strategy," the motion court did not err in determining trial counsel was not ineffective. *Anderson*, 196 S.W.3d at 33 (citing *Worthington v. State*, 166 S.W.3d 566, 573 (Mo. banc 2005)).

Next, Movant argues trial counsel and the motion court misunderstood the claim given the testimony at the evidentiary hearing and the motion court's order. As for trial counsel, "[t]he reasonableness of counsel's strategic choices must be viewed as of the time the decisions occurred, taking into consideration the circumstances of the case." *Tucker*, 468 S.W.3d at 473 (citing *Strickland*, 466 U.S. at 689). Here, based on the record, including the trial transcript, trial counsel understood the number of eyewitnesses involved in Movant's case and the significance of the evidence.

As for the motion court, it found:

> [T]rial counsel's explanation regarding the identification instructions that the identification was by one witness only by voice and not facial features and that the description of the perpetrators did not lend itself to any eyewitness identification that therefore it was not beneficial to submit the eyewitness identification.

The motion court's reference to "one witness only by voice and not facial features' is in reference to trial counsel's opinion of what witness the jury found most convincing. At the evidentiary hearing, trial counsel stated he believed the jury ultimately found the Church's Chicken manager's testimony most convincing. The motion court consistently noted trial counsel's strategy was to not use the instruction because it "did not lend itself to any eyewitness identification" and, therefore it was not "beneficial to submit" the instruction. Thus, trial counsel and the motion court understood the evidence in Movant's case.

As the Missouri Court recognized, counsel's strategy in not seeking the

instruction which could arguably render the witnesses' testimony more credible is

11

the type of reasonable trial strategy that does not render performance ineffective. His strategy included emphasizing in opening statement, cross examination and closing argument witness credibility. This strategy was reasonable considering the amount of eyewitness testimony presented during the trial. Giving the instruction could have focused the jury's attention on the witnesses' credibility, whereas counsel's use of argument and cross-examination was intended to establish the witnesses' lack of credibility. Counsel's strategy in not emphasizing the witnesses' credibility though giving the instruction was reasonable under the facts of the case at the time the decision was made. Accordingly, the Missouri Court's determination that counsel was not ineffective for failing to request the instruction is neither unreasonable nor contrary to federal law. Ground One is denied.

**Ground Two**

Petitioner claims counsel was ineffective for failing to request an alibi instruction. As Respondents correctly argue, Petitioner presented this ground to the motion court, but failed to present this claim in his post-conviction appeal. Petitioner failed to show cause and actual prejudice for this failure. *See Murray v. Carrier*, 477 U.S. 478 (1986). As such, this claim is procedurally barred from this Court's review. *Sweet v. Delo*, 125 F.3d 1144, 1149-50 (8th Cir. 1997).

**Conclusion**

Petitioner's Ground One is without merit and is denied. Petitioner's Ground Two is procedurally barred from review.

## Certificate of Appealability

In a § 2254 proceeding before a district judge, the final order is subject to review on appeal by the court of appeals for the circuit in which the proceeding is held. 28 U.S.C. § 2253(a). However, unless a circuit judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. § 2253(c)(1)(A). A district court possesses the authority to issue certificates of appealability under § 2253(c) and Fed. R. App. P. 22(b). *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). Under § 2253(c)(2), a certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003); *Tiedeman*, 122 F.3d at 523. To make such a showing, the issues must be debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Miller-El*, 537 U.S. at 335–36 (reiterating standard).

Having thoroughly reviewed the record in this case, the Court finds that Petitioner has failed to make the requisite "substantial showing." *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). Accordingly, a certificate of appealability will not issue.

Accordingly,

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus [Doc. No. 1] is **DENIED**.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 9th day of December, 2024.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE

14